■ LOUIS S. WOLK, Respondent, v RICHARD REISEM, as Chairman of the Rochester Preservation Board, et al., Appellants.—Judgment unanimously affirmed, with costs. Memorandum: In this CPLR article 78 proceeding respondents, who constitute the Rochester Preservation Board (Board), appeal from a judgment which annulled the Board's determination denying a certificate of appropriateness for the demolition of a house owned by petitioner, and directed issuance of such certificate. The house is located on East Avenue in an area designated as a preservation district. Petitioner also owns several contiguous parcels of land which, together with the subject parcel, total approximately five acres. The premises have been vacant since 1973 and have several times been vandalized and fired. In 1974 the Rochester Commissioner of Buildings found the premises to be "unsafe and dangerous to public safety, life and property" and directed immediate demolition. In 1975 the Rochester Fire Marshall recommended to the Director of Zoning that the building be demolished because it was a threat to the safety of fire fighters. The Board's denial of petitioner's application for a certificate of appropriateness authorizing demolition was based primarily upon its conclusion that the applicable zoning ordinance (Rochester City Code, § 115-37, subd C) proscribed it from approving demolition of the building "until it has issued a Certificate of Appropriateness for the work which will replace that structure." In seeking the certificate, petitioner did not submit an application for a new proposed use of or construction upon the property. Subdivision C of section 115-37 of the Rochester City Code provides: "Certificate required. It shall be unlawful for any person to, and no person shall, perform, cause or permit any construction, alteration, remodeling, removal, movement or demolition of any building, structure, other improvement or premises which has been designated a landmark or landmark site or which is located within an area which has been designated as a Preservation District, and no person shall secure or issue a permit authorizing any such work unless a certificate of appropriateness with respect to such work, and in the case of demolition of a principal structure, with respect to the new construction proposed to replace such structure, shall have first been issued pursuant to this section, and no person shall maintain any landmark, landmark site, or property located within a Preservation District on which any such work has been performed in the absence of, or in violation of the terms of, such a certificate." In our view, the Board erroneously interpreted the ordinance. The only reasonable construction which may be placed upon its language is that demolition and new construction are separate events, each of which require the issuance of a certificate of appropriateness before its undertaking. Thus, the issuance of a certificate is a precondition to demolition of the subject property and, similarly, will be a precondition to any future construction thereon. The Board also based its determination upon its finding that "The house seems to be suitable for conversion to an income producing use". That finding is wholly arbitrary and unsupported in the record. The Board has not identified any such use and no proof was submitted in that regard. Indeed, petitioner clearly demonstrated that the cost of renovating the structure for an acceptable proposed use would result

in an annual operating financial loss. Furthermore, the only other evidence of a proposed use which was offered by petitioner was for a 150-unit apartment development. This use, however, was not feasible because the sewage capacity required for such project would not be available until at least 1982. The Board's decision also included its finding that demolition of the building "would damage the integrity of the streetscape and further reduce the inventory of original structures which gives East Avenue its unique character in the City of Rochester." While the Board's purposes and goals are indisputably laudable and generally deserving of unfettered support, we find its determination in the circumstances of this case to be arbitrary, capricious and an abuse of discretion. In the face of a clear threat to the public health and safety, the governmental duty to its citizens and civil servants to protect such vital interests must take precedence over the aesthetic and historical concerns expressed by the majority of the Preservation Board in denying petitioner's application (see Rochester City Code, § 115-37, subd I). The threat of imminent danger was fully established in the documents and testimony before the Board, and demolition of the structure should be permitted. (Appeal from judgment of Monroe Supreme Court—art 78.) Present—Moule, J. P., Cardamone, Simons, Dillon and Hancock, Jr., JJ.